The next case today is H.H. v. Merrick B. Garland, Appeal No. 21-1150 and Appeal No. 21-1230. Attorney Kim, please introduce yourself for the record and proceed with your argument. Thank you. Good afternoon, Your Honors. May it please the Court, Seng Yeob Kim for Petitioner. Chief Judge Howard, if I may, I would like to reserve two minutes for rebuttal. Yes. Thank you, Your Honor. Before you start, let me ask you one question, what I think is the most fundamental question. What you're asking is that the Court adopt for this type of case the willful blindness approach. And if the Court does, it would be a matter of remanding the case. That's what you're asking in a nutshell. Am I correct? That is correct, Your Honor. And if I add a comment, it's not only about the adoption of willful blindness, but I think it's very important for this Court to actually clarify the precise meaning of willful blindness. The prior panelist of this Court has already said that ACWIS includes willful blindness. But then the question is, what does it mean by willful blindness? Where does willful blindness apply? Because based on the regulation, it's clearly two elements. One is awareness. The other one is breach of legal responsibility. So for that, I think even though the proposed regulation of the previous government, even though that proposed regulation has been enjoined, it actually provides good guidance, at least with respect to how this Court can distinguish awareness prong from breach of legal responsibility. And under awareness, there are two ways that an applicant can satisfy, which is actual knowledge or willful blindness. So you're asking us to consider that proposed rule? No, what we are asking is the government even itself acknowledges that there are two elements. And that's what we are arguing because it appears that many of the circuit courts have not explicitly separated one element from the other, other than the Second Circuit. And that's where the confusion may come. And that is precisely what's happening in this case. So the IJ made a fact finding that Underground Government is aware of the gangs of activity created by Power Vacuum. The IJ also made an explicit finding of the meaning of the green light on petitioner, at least with respect to El Salvador, which IJ granted the CAD. So that fact finding should be sufficient to satisfy willful blindness, at least in the definition of the criminal law context, because willful blindness only requires awareness of high probability of facts' existence and deliberate ignorance to that fact's existence. But confusingly and erroneously, the BIA said, by affirming the IJ's fact finding, that petitioner's evidence has not established, quote, any acquiescence, including the concept of willful blindness, but without actually defining what that means by willful blindness. So I think this case is a good example to show how this court's guidance is critical so that the fact finders within this court's jurisdiction can apply the precise meaning of the willful blindness. So as Judge Halperin was suggesting, you're suggesting, well, maybe you're saying two things. At least remand so that the BIA can address what meaning should be given to this second part, the legal duty to intervene, however that's framed, or we should adopt a standard of willful blindness that goes beyond awareness and actually gives content to this obligation to intervene. Ideally, you would like us to do the latter. Actually give content ourselves to what that standard should be. Is that correct? So let me be transparent about specifically what we request. So we think the court at least should define and clarify willful blindness because that's how agency relied on and used to deny the acquiescence. Now, the agency did not speak about the breach of legal responsibility, so it makes sense if the court is inclined to remand to allow the agency to address that issue for the first instance. But if the court is inclined to at least mention about these different definitions of what it means by breach of legal responsibility, this court can also take a look at how the United Nations Committee Against Torture is applying the due diligence standard. We are not asking the court to adopt that standard, but because it appears that no agency, no court has ever defined the precise meaning of the breach of legal responsibility, it might be important for the court to suggest to the agency that there are different definitions, and one definition could be the standard could be the international standard, and that is what we are precisely asking before this court. Now, yes, Your Honor. That's a helpful clarification. Thank you. Let me move on to the other claims. So another claim, putting aside the acquiescence, the agency also committed a legal error on the likelihood of torture by public officials under color of law.  But I just do not see anywhere in the agency's decision that it addressed that claim. So because failure to address or give any consideration to this argument is a legal error, the proper remedy before this court is to vacate that claim and allow the BIA to address it for the first instance. Now, unless this court has any questions, let me move on to our last claim. Now, the petitioner also raised the argument that MA-13's, the gang's activities can be attributable to state or otherwise construed under color of law. Now, for that claim, this court may not need to address that claim if the court is only addressing the acquiescence because many of the evidence may overlap whether this court applies the IG's fact-finding or the evidence in the record to acquiescence or this color of law question whether private actor can be construed ever as acting under color of law. But if the court is inclined to address it, we are relying on matter of OFAS. The former attorney general specified in that case that the meaning of the Convention Against Torture Color of Law is the same as the 1983 claim color of law. And for that conclusion, the attorney general also relied on the Supreme Court's 1983 cases for that definition. So because the agency itself applies the civil rights jurisprudence color of law definition to the Convention Against Torture, it is not unreasonable to consider whether those 1983 case law precedents on the question of a private actor can be construed under color of law as guidance for the agencies to consider. And unlike the government's characterization of the petition request, we are not asking the court to explicitly adopt this test. Again, somewhat similar to the breach of legal responsibility, if the court is inclined to remand this case to agency, this court should also direct the agency to address that claim as well. Counsel, maybe this is a more appropriate question for opposing counsel, but I guess I'll pose it to you. I mean, I think you claim another legal error, right? I mean, the BIA said there was no need, because of its finding on the acquiescence issue, there was no need to explore the issue of torture instigation of the government of Honduras itself. I mean, that argument was made, and I guess I don't understand the logic of why, having made this adverse finding on acquiescence, you don't have to go on to consider the possibility that the government of Honduras itself was engaged in torture. I assume you would like that addressed on remand as well. That is correct, and that's important because of the evidence in the record. Again, this case involved two experts, in which the fact finder, the IJ, did not question about their credibility, did not question about their expertise. So the experts' opinion and conclusion are that it is more likely than not that petitioner will be harmed by the gangs, but also by public officials, and which is why petitioner clearly and sufficiently challenged that claim before the BIA. And again, I don't see anywhere in the BIA's decision that it addresses that claim, which is different from acquiescence. It's a separate claim, so we asked the court to provide an order to the agency to address that claim on remand. Now, I see that I still have two and a half minutes left, but I don't have any further argument unless the court has any questions. I do acknowledge that I have two minutes for rebuttal, but I may respond if needed after hearing my opposing counsel's argument. Yes, thank you, counsel. Thank you, Honor. Yes, Ms. Giafrida. Good afternoon. I will start, I guess, with the burden of proof, reminding the court, I suppose, that the burden of proof was on petitioner to show that the record has to compel the conclusion that he showed a clear probability of torture by or with the consent or acquiescence of the Honduran government. So, CAD protection applies only to acts that occur in the context of governmental authority. And in this case, the agency found that the petitioner didn't meet his burden to establish the requisite likelihood of that state action. So, in this case, he had to show that either a Honduran public official or a person acting under color of law either commits, instigates, or consents or acquiesces. And in this case, the immigration judge found that there was no past torture or harm of any kind to petitioner. And the immigration judge determined that he did not prove that an official of the Honduran government was likely to either consent or instigate or torture him himself. He didn't meet that clear probability standard. And he didn't prove the acquiescence prong. Now, when it comes to the acquiescence prong, there are two elements to it. A mental state, which includes prior awareness that torture is going to occur. And you can almost think of this as the mens rea. And that's prior awareness, which can include willful blindness, which is already a part of this court's jurisprudence and case law. The IJ got it wrong. The IJ spoke about willful acceptance, not willful blindness. And that's not our standard. And then the BIA just seemed to gloss right over that by saying, well, the findings that he made pursuant to willful acceptance, they're comprehensive enough to take in willful blindness. It's sort of, in effect, rewriting the decision of the IJ. The BIA can't do that. Well, the BIA, under the BIA's case law, the findings of fact are reviewed for clearer, but the legal determinations are reviewed de novo. And in its view, willful blindness is the legal determination. So it made that determination that based on the immigration judge's factual conclusions about what he was saying and that he was correct, that petitioner failed to show willful blindness. So, but the second part of the determination is breach. And that's the breach of the legal responsibility to intervene. And this is not the same as unwilling or unable. And petitioner is incorrect. My opposing counsel is incorrect when he says that no court has ever delved into what this means. This court has plenty of cases. And there's a string cite in my brief, in the red brief, pages 27 and 28. There are a lot of cases, courts have talked about what breach of legal duty means. And it doesn't mean, for example, the failure to successfully, or the failure to prevent harm to citizens, for example, from gangs, committing crimes, or extortion, or general chaos in a country. And this court's cases on that, for example, are Mayorga Vidal, which is 675 F3rd 9. Augustin, 914 F3rd 43. Perez Trujillo, 3F4th 10. We've actually, we have articulated, we have acknowledged that the acquiescence is actually a two-part, a two-part issue, awareness and breach of legal duty. And we have articulated what we mean by legal duty. Right. SV, the Board's decision in matter of SV did the same thing. It was discussing acquiescence. And a lot of times, people collapse acquiescence into willful blindness. And there are separate things. Willful blindness is only talking about the awareness part. And when the Board decided SV, it was talking about the whole acquiescence standard. And in SV, the Board discussed acquiescence, and it discussed both prongs. And it said with regard to the awareness part, it quoted the Senate reservations as conditions. And it said, quote, both actual knowledge and willful blindness fall within the definition of acquiescence, close quote. But the Board was concerned about distinguishing the specialized meaning in CAT from kind of the generic, like, dictionary definition of acquiescence as passive or silent assent. So it came up with this willful acceptance standard. But then all the courts said, no, we're very familiar with what willful blindness means in the law. And so they kind of rejected that part of it. And, you know, willful blindness is a very familiar standard in the law. And, you know, there's jury instructions on it that say that, you know, it can be a substitute for the knowing state of mind that, you know, a defendant who's aware of a high probability of a fact in question, and, you know, if he consciously and deliberately avoids the fact, that can establish a knowing state of mind. So that, as in the Senate, the court said, no, no, you know, you don't need this willful acceptance. We know what willful blindness is. But the second part of SV, and the reason why SV hasn't been completely overruled, is that the second part of SV deals with breach. And this is the part that says that, you know, Article 3 doesn't extend protections to persons fearing entities that a government is unable to control. And all of the courts, including this court, still follow that part of SV, have not repudiated that part that has to deal with the breach of the legal duty. Because the legal duty does not include the inability to control private entity because cat is narrow. It's very narrow. It only applies in the context of governmental authority. And when he, when my opposing counsel was talking about under color of law and matter of OFAS, that attorney general decision, that attorney general decision was dealing with the opposite end of the spectrum. And it was dealing with whether or not there was an exception to a public official in terms of when a public official could be deemed to be acting outside the scope of his official duty and be deemed a rogue official, such that he was not covered under the scope of cat. And whether there was this rogue official exception and the attorney general said, no, we're going to use the color of law, under color of law standard. And that says that, um, that, um, that it's enough that if the person is empowered with this, um, you know, by the state and, you know, that they're cloaked with this authority, that that's enough. And so that we're, you know, there's not going to be a rogue official exception. So to kind of stretch that all the way to the other end of the section and say that because criminals are trying to usurp power to clothe them under color of law, that that fits under matter of OFAS is extraordinarily, I think that that, you know, just does not fit that at all. So this would not fit under that, that scheme at all. And in fact, I think this, the court has everything it needs to decide this case in Perez Trujillo and its prior precedent. And in fact, in this case, really isn't all that different from the many, many cases that this court has decided before of former gang members who have, um, who say that they have received death threats for abandoning the gang, deserting the gang and say that that means that that is a sentence of death for them. And that this court has found that, that, you know, those, that threat and the fact that the government, you know, Central American government governments may not, you know, that they have presented all the same sort of country conditions information. And the fact that the governments there have, you know, weaknesses and corruption and the police are corrupt, it hasn't been enough to establish that those governments will acquiesce in the torture of apostate gang members. And that was certainly the case in Perez Trujillo, which is controlling precedent, which is like very, very similar to this case. And I think as far as the board, as far as the de facto government, like similar to OFAS, there just isn't any support in the facts or in the case law for filing this case. Finding that criminal organizations could qualify as governmental entities under the cat. So, um, I don't think that that argument necessarily would fly either. If there's anything else, I think Judge Lopez also had a question about the board saying that the board didn't address the argument that the government of Honduras itself would torture the petitioner. But in fact, the immigration judge addressed it extensively himself in his decision. And on appeal, petitioner made arguments about that to the board. The board reviewed those arguments and just simply said, we find no error in the immigration judge's decision in this regard, which is what the board did with this, what it was supposed to do, what its job to do. And the board was not going to make new findings about that. That's not its role under the regulations. So he didn't, it didn't ignore that, those arguments or those, or that particular portion of the case. If there's no other questions, because the agency decision is supported by substantial evidence and is in conformity with the precedent of the court, the petition should be denied. Thank you. Thank you. Mr. Kim, anything further? Chief Judge Howard, I just want to make two points really quickly, if I may. So the first point is, what did the board do with respect to the IJ's decision? Because my opposing counsel made an argument that board had authority to apply the established facts to the law. So the board had authority to say differently than IJ. But we have to look at how the board affirmed the IJ's decision. So if you look at the page four of the BI decision, the second paragraph, the board really relied on the IJ's fact-finding by applying the clear error standard and then made a conclusion that IJ's fact-finding does not even establish the concept of willful blindness. So the government's argument that the board had authority to make a new legal conclusion is not actually supported by the agency's conclusion. As Judge Lipp has implicitly noted, as we argued, what the board did was completely ignoring the reasoning and legal analysis of the IJ's. Now, the second point is the government's argument about the inability to protect that that is insufficient to satisfy breach of legal responsibility. Now, the categorical holding that inability to protect is not sufficient to satisfy acquiescence could create a dangerous problem. So we acknowledge that in some cases the government's inability to protect may not even be sufficient to satisfy the international standard because the international standard talks only about whether the government is doing due diligence to protect. So if they have no ability to protect, then that does not reach their legal responsibility. But making a categorical holding can be problematic because even though non-citizens and applicants have the burden to prove convention against torture claims, the purpose of the convention is to put burden on the state parties. So the countries, you have to do your best, your job, to prevent torture. So by making a categorical holding that inability to protect is not sufficient to satisfy acquiescence could give good excuse for the state parties to merely saying that we don't have ability to protect. Therefore, we either can deport or we can condone and tolerate the torture by private actors. Now, other than that, unless the court has any questions, I waive my rebuttal argument time. Very good. Thank you. Thank you to all, counsel, for your arguments today. That concludes arguments for the day. This session of the Honorable United States Court of Appeals is now recessed until the next session of the court. God save the United States of America and this honorable court. Counsel, you may disconnect from the meeting.